UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

HERMAN LEBOWITZ, EKATERINA REZNIKOV,
and KEITH BLACK ,

                      Plaintiffs,

               -against-

THE NEW YORK CITY DEPARTMENT OF
EDUCATION, JOHN O'MAHONEY, and LAURA IZZO
(individually and in their official capacities),

                      Defendants.

-------------------------------------------------------------------X

**ORAL ARGUMENT
REQUESTED**

Docket No.: 15-cv-02890
(LDH) (ST)

**Hall, J.
Tiscione, M.J.**

**Service Date:
March 13, 2019**


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
# MOTION FOR SUMMARY JUDGMENT


Stagg, Terenzi, Confusione & Wabnik, LLP
*Attorneys for Plaintiffs*
*Herman Lebowitz, Ekaterina Reznikov and Keith Black*
401 Franklin Avenue, Suite 300
Garden City, New York 11530
Tel: (516) 812-4500
Fax: (516) 812-4600


Submitted by:
Debra L. Wabnik, Esq.
David Ehrlich, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

I.  PLAINTIFFS' CLAIMS ARE TIMELY AND NOT BARRED BY ANY
    LIMITATIONS PERIOD ............................................................................................4

    A.  Plaintiffs' SHRL and CHRL Claims Were Timely
    Filed Against the New York City Department of Education....................................4

    B.  Reznikov's ADEA Claim Was Timely Filed................................................12

    C.  Individual Liability and Statute of Limitations
    for Individuals Under NYSHRL and NYCHRL ....................................................12

II. PLAINTIFFS SUFFICIENTLY ESTABLISH AND RAISE ISSUES OF FACT
    AS TO THEIR DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
    CLAIMS WARRANTING DENIAL OF DEFENDANTS' SUMMARY
    JUDGMENT MOTION................................................................................................13

    A.  Plaintiffs' NYCHRL Discrimination and Reznikov's Hostile
    Work Environment Claims Under the ADEA and NYSHRL
    Should Be Sustained ..............................................................................................13

        1.  Hostile Work Environment Claims Under ADEA and NYSHRL
        Require an Analysis of the Totality of the Circumstances
        and the Specific Context in Which the Abuse Occurred ...........................13

        2.  Liability Standard Under the NYCHRL .......................................................14

        3.  Defendants Wrongly Dissect and Isolate Specific Instances
        of Discriminatory Conduct and Harassment, and Fail to
        Appreciate the Entirety of the Evidence .....................................................14

        4.  The Evidence Must Be Viewed Holistically and In
        Context-the Discriminatory Comments and False, Unsupported
        and Unjustified Negative Observation Reports Strike at the
        at the Heart of a Teacher's Working Conditions and
        Psychological Well-being ............................................................................17

        5.  The Evidence Supports Reznikov's ADEA and NYSHRL
        Hostile Work Environment Claim and Plaintiffs' NYCHRL
        Discrimination/Hostile Work Environment Claims ....................................19

## TABLE OF CONTENTS (cont'd)

Page

    a.    Evidence Supporting Reznikov's Claims (ADEA, NYSHRL and NYCHRL) .................................................19

    b.    Evidence Supporting Lebowitz's NYCHRL Claim .......................21

    c.    Evidence Supporting Black's NYCHRL Claim ............................22

6.    The Evidence of Abuse Proffered by Plaintiffs is Sufficient to Establish their Claims Under the NYCHRL and Reznikov's Hostile Work Environment Claim Under the ADEA and NYSHRL ........24

7.    Defendants' Abuse Was Based on Age and There is More Than Ample Evidence to Allow a Reasonable Juror to Make that Determination .........................................................................26

B.    Lebowitz's Discrimination Claims Based on Discrete Adverse Action-ADEA and NYSHRL ...............................................................32

CONCLUSION ...............................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Borum v. Village of Hempstead,
590 F. Supp.2d 376 (E.D.N.Y. 2008) ...................................................................7

Boza-Meade v. Rochester Housing Authority,
170 F. Supp.3d 535 (W.D.N.Y. 2016) ..................................................................6

Cincotta v. Hempstead Union Free Sch. Dist.,
2016 WL 4536873 (E.D.N.Y. Aug. 30, 2016) ......................................................6

Claudio v. Mattituck-Cutchogue Union Free School Dist.,
955 F. Supp. 2d 118 (E.D.N.Y. 2013) ....................................................26, 31, 32

Dash v. Board of Ed. Of City School Dist. of N.Y.,
238 F. Supp. 3d 375 (E.D.N.Y. 2017) ..................................................................9

Esposito v. Deutsche Bank AG, 2008 WL 5233590 *5
(S.D.N.Y. Dec. 16, 2008) ...............................................................................4, 12

Floratos v. International Leadership
Charter School Inc., 2011 WL 291852 *3 (S.D.N.Y. Jan. 20, 2011) ...............5, 6

Gallagher v. Delaney,
139 F. 3d 338 (2d Cir. 1998) ...........................13, 15, 20, 22, 24, 28, 29, 34

Gorzynski v. JetBlue Airways Corp.,
596 F.3d 93 (2d Cir. 2010) ................................................................................33

Gruberg v. Board of Ed. of Sewanhaka Central High School Dist.,
3 F. Supp. 2d 280 (E.D.N.Y. 1998) ................................16, 19, 24, 25, 30, 32, 33, 34

Harris v. Forklift Sys.,
510 U.S. 17 (1993) .............................................................................................13

Jones v. New York City Dep't of Educ.,
286 F. Supp.3d 442 (E.D.N.Y. 2018) .................................................................33

Lindell v. N.Y.C. Dep't of Ed.,
2018 WL 1611370 *10 (E.D.N.Y. March 30, 2018) ...........................................29

Mihalik v. Credit Agricole Cheuvreux N.A., Inc.,
715 F.3d 102 (2d Cir. 2013) ........................................................9, 14, 22, 24, 25

Miller v. International Telephone
and Telegraph Corp., 755 F.2d 20 (2d Cir. 1985) ...............................................12

National R.R. Passenger Corp. v. Morgan,
536 U.S. 101 (2002) .........................................................................................8, 9

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

Papelino v. Albany College of Pharmacyof Union Univ.,
   633 F.3d 81 (2d Cir. 2011) ...................................................................8

Parron v. Herbert,
   2018 WL 2538221 (S.D.N.Y. May 18, 2018) ...................................27

Riccardo v. New York City Dep't of Ed.,
   2016 WL 7106048 *6 (S.D.N.Y. Dec. 2, 2016) ...........................5, 6, 7

Russo v. N.Y. Presbyterian Hosp.,
   972 F. Supp. 2d 429 (E.D.N.Y. 2013) ...........................................9, 14

Schnabel v. Abramson,
   232 F.3d 83 (2d Cir. 2000) ................................................................26

Seivright v. Montefiore Med. Ctr.,
   2014 WL 896744 (S.D.N.Y. March 3, 2014) ....................................27

Siddiqi v. New York City Health & Hosp. Corp.,
   572 F. Supp. 2d 353 (S.D.N.Y. 2008) .................................................7

Smith v. Tuckahoe Union Free School Dist.,
   2009 WL 3170302 *11 (S.D.N.Y. Sept. 30, 2009) .............................6

Sotomayor v. City of New York,
   862 F. Supp. 2d 226 (E.D.N.Y. 2012) ...............8, 9, 12, 14, 16, 18, 19

Sundaram v. Brookhaven Nat. Labs.,
   424 F. Supp. 2d 545 (E.D.N.Y. 2006) ...........................................4, 12

Thomas v. New York City Dep't of Ed.,
   938 F. Supp. 2d 334 (E.D.N.Y. 2013) ..........................................13, 25

Whidbee v. Garzelli Food Specialties, Inc.,
   223 F.3d 62 (2d Cir. 2000) ................................................................14

**State cases**

Martinez-Tolentino v. Buffalo State College,
   277 A.D.2d 899, 715 N.Y.S.2d 554 (4th Dep't 2000)....................4, 12

Matter of Amorosi v. South Colonie Ind. Central School Dist.,
   9 N.Y.3d 367, 849 N.Y.S.2d 485 (2007)...........................................5, 6

Melman v. Montefiore Med. Ctr.,
   98 A.D.3d 107 (1st Dep't 2012) .........................................................27

Penman v. Pan Am. Airways,
   69 N.Y.2d 989, 517 N.Y.S.2d 719 (1987)......................................4, 12

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**Statutes**

29 U.S.C. § 623(a)(1) ...........................................................................................................35

29 U.S.C. §§ 626(d)(1), 633(b)...........................................................................................13

42 U.S.C. § 2000e-5(e)(1) ...................................................................................................13

## PRELIMINARY STATEMENT[1]

Defendant John O'Mahoney ("O'Mahoney"), after being charged with ethics violations to which he pled guilty, was appointed as principal of the Sheepshead Bay High School (the "School"). From the start of his appointment in January 2012, he engaged in a plan to purge the older teachers from the School. He did not try to hide his prejudices against, and resentment for, the older teachers. He publicly stated to staff that the older teachers were receiving extra money because they are older and have more years in the system, and not because they were contributing more to the School. O'Mahoney also openly stated that the older teachers were in their "fuck you years" and collected their "fuck you money," feeding the stereotype that older teachers are lazy and do not care about their job. When Plaintiff Herman Lebowitz challenged O'Mahoney regarding those statements, he told Lebowitz that he tried to get rid of senior teachers, but could not because it either takes too long or the union steps in.

The School was designated a failing school, which meant O'Mahoney could excess up to 50% of the teachers. O'Mahoney did that by targeting the more senior teachers and hiring younger ones. The union successfully grieved that practice, claiming it violated the seniority provision of the collective bargaining agreement. O'Mahoney had to take back the senior teachers he had excessed. His fury against the older teachers only became more intense.

The School was then scheduled to be closed in four years, where it would not accept new ninth grade students, and at the end of four years, there would be no more students. The drop in student population resulted in the need to excess teachers each year based on seniority, and O'Mahoney resented that he had to excess young teachers and keep the older teachers. Younger teachers were concerned that they were going to be excessed before attaining tenure.

---

[1] Plaintiffs respectfully refer the Court to Plaintiffs' August 24, 2018 Counterstatement of Facts and Declaration of David R. Ehrlich for a full recitation of the facts. Plaintiffs also do not contest Defendants' arguments pertaining to Black's discrimination claims for adverse action under the ADEA and NYSHRL, or Reznikov's discrimination claims for adverse action under the ADEA and NYSHRL.

O'Mahoney and his minion, Assistant Principal Izzo, promised the young teachers that they would be fine and that he was going to get rid of the older teachers.

Since he could not fire the older teachers, O'Mahoney and Izzo targeted them in an attempt to make their lives so miserable that they would transfer, retire or otherwise leave the School. Their main weapon was to provide the older teachers with false, fabricated and unsupported negative evaluations. In doing so, they struck at the heart of the tenured teachers' job security, their livelihood, and their plans to retire with dignity, and strove to psychologically break them down so that they would voluntarily retire or leave the School. The statistical evidence proves how rampant O'Mahoney and Izzo's scheme was -- in the three school years 2013-14, 2014-15 and 2015-16, the only teachers who received negative end-of-year ratings were over 40 (except one who was 39); and not one teacher under 39 received a negative end-of-year rating during that period.

Defendants succeeded in their goal to psychologically break Plaintiffs. For instance, in January 2013, O'Mahoney wholly fabricated a negative observation report of Plaintiff Keith Black—the lesson O'Mahoney said he observed and evaluated did not happen. Indeed, the period he said he observed Black was not a period he taught. The fact that O'Mahoney committed this fraud shook Black and he realized the predicament he was in working for a corrupt administration. The fraud continued against Black with additional negative evaluations, which caused Black to seek and receive psychological treatment, take medication and go on leaves to cope.

Plaintiffs Lebowitz and Reznikov, after receiving positive evaluations for decades, all of the sudden began receiving extremely negative evaluations. Izzo, after checking to make sure Lebowitz was not recording her, told Lebowitz that she had to give him a negative rating on an observation report to make sure his year-end rating was sufficiently low. Ultimately, Defendants

brought charges against Lebowitz under Education Law § 3020-a seeking to discharge him. Their attempt failed, but the stress and injustice of knowing that his supervisors were deliberately providing him with false and unsupported negative evaluations broke Lebowitz. He sought and received mental health treatment and is taking several medications for panic attacks, anxiety and depression. Even Reznikov, who prided herself on her toughness and had never sought or received mental health treatment in her life, broke down and was directed by her cancer physician to seek mental health treatment and medication.

Not only did Plaintiffs have to deal with the deliberately false negative observation reports and offensive comments regarding their age, but they had to work in an environment created by O'Mahoney and Izzo that blatantly favored the young teachers and tormented the older ones. Defendants provided advance notice of observations to the younger teachers, but not the older ones; Defendants allowed the younger teachers to have do-overs for their observation reports, but not the older ones; Defendants disciplined older teachers for certain infractions, but not the older ones. The disdain for the older teachers in the School was palpable to all.

Based on the totality of facts and evidence presented, Plaintiffs established a claim under the New York City Human Rights law showing that they were discriminated against because of their age and were treated less well than the younger teachers, and Reznikov established a hostile work environment claim under the ADEA and NYSHRL. In addition, Lebowitz established a discrimination claim under the ADEA and NYSHRL based on Defendants' adverse action of bringing Education Law 3020-a charges against him because of his age.

Defendants attempt to dissect and isolate all of the discriminatory acts by Defendants hoping to minimize their illegal conduct. However, when assessing a claim under the NYCHRL and hostile work environment claims, the Court must examine all of the facts and circumstances as a whole. Plaintiffs must be allowed to provide a mosaic of evidence that when pieced together

gets at the core reality of what occurred at the School that led three experienced and healthy senior teachers to suffer from serious mental health issues. In the same way, because all of Defendants' discriminatory acts are linked together and are all part of the NYCHRL and hostile work environment claims, the continuing violation doctrine allows all of Defendants' discriminatory acts to be considered when determining liability.

## I.   PLAINTIFFS' CLAIMS ARE TIMELY AND NOT BARRED BY ANY LIMITATIONS PERIOD

### A.   Plaintiffs' SHRL and CHRL Claims Were Timely Filed Against the New York City Department of Education

Under New York Education Law, plaintiffs must commence their actions against any school, school district, board of education, or an officer of a school district or board of education, within one year after the cause of action arose. NY Educ. Law § 3813(2-b).

It is well settled New York law that statute of limitations for SHRL and CHRL claims are tolled when plaintiffs file administrative complaints with the New York State Division of Human Rights ("NYSHRL") or the Equal Employment Opportunity Commission ("EEOC"). <u>See</u> <u>Penman v. Pan Am. Airways</u>, 69 N.Y.2d 989, 990, 517 N.Y.S.2d 719, 719 (1987) (statute of limitations tolled during pendency of complaint with NYSDHR); <u>Martinez-Tolentino v. Buffalo State College</u>, 277 A.D.2d 899, 899, 715 N.Y.S.2d 554, 555 (4th Dep't 2000)(filing with EEOC is deemed filing with NYSDHR). The District Courts in this circuit have regularly followed the holding in <u>Penman</u> to toll the statute of limitations when an administrative complaint has been filed and is pending. <u>See, e.g.</u>, <u>Esposito v. Deutsche Bank AG</u>, 2008 WL 5233590 *5 (S.D.N.Y. Dec. 16, 2008); <u>Sundaram v. Brookhaven Nat. Labs.</u>, 424 F. Supp. 2d 545, 565 (E.D.N.Y. 2006).

Using the same principles and logic for tolling the three year limitations period in the SHRL and CHRL, the District Courts have held that the one year limitations period in the New York Education Law is similarly tolled when a complaint has been filed with the EEOC or

NYSDHR.  See, e.g., Riccardo v. New York City Dep't of Ed., 2016 WL 7106048 *6 [Report

and Recommendation] (S.D.N.Y. Dec. 2, 2016), adopted by District Judge for reasons set forth

in Report and Recommendation 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017) ("There is no apparent

reason to treat [filings with the EEOC or NYSDHR] differently under the one-year statute of

limitations that applies to claims against school districts and their officers under the human rights

laws.").

     The Second Circuit has not addressed the issue of whether the filing of a charge or

complaint with the EEOC or NYSDHR, respectively, should toll the limitations period for

discrimination claims in which the statute of limitations is governed by the New York Education

Law.  However, some District Courts held that although a filing with the EEOC or NYSDHR

tolls the three year limitations period under the human rights laws, it does not toll the one year

limitations period under the New York Education Law. See Riccardo, 2016 WL 7106048 at * 6

(discussing those cases). Not only is that holding illogical in light of the holdings that an EEOC

filing tolls the three year statute of limitations for discrimination claims, but it is based on a

clearly flawed interpretation of a New York Court of Appeals case, violates fundamental

principles of fairness, especially given the remedial nature of the discrimination laws, and will

lead to absurd results.

     For instance, one District Court case held that the one year statute of limitations period

under the Education Law does not toll when a plaintiff files a claim with the NYSDHR or EEOC

by relying on the New York Court of Appeals case Matter of Amorosi v. South Colonie Ind.

Central School Dist., 9 N.Y.3d 367, 849 N.Y.S.2d 485 (2007).  See Floratos v. International

Leadership Charter School Inc., 2011 WL 291852 *3 (S.D.N.Y. Jan. 20, 2011).  The court in

Floratos stated that "the Court of Appeals held that the one year statute of limitations on claims

of discrimination are [sic] not tolled by the filing of an EEOC complaint." Floratos, 2011 WL

291852 at *3. However, the Floratos court's summary of the Amorosi case is simply wrong—it is clear error. As the court in Riccardo recognized, Amorosi does not address the tolling issue at all. Riccardo, 2016 WL 7106048 at *6; Amorosi, 9 N.Y.3d at 369-374. Rather, Amorosi only addressed the issue of whether discrimination claims against school districts will follow the one year limitation period under the Education Law instead of the three year period under the NYSHRL/NYCHRL. Amorosi, 9 N.Y.3d at 371 ("The question for us to determine is whether this one-year statute of limitations applied to an Executive Law § 296 cause of action.")[2] Therefore, this Court should not follow the clearly erroneous reasoning set forth in Floratos.

Not only is the logic flawed in the holdings that reject tolling for filing an EEOC charge or NYSDHR complaint, but the position that a NYSDHR complaint or EEOC charge does not toll the one year limitations period governing discrimination claims against school districts will lead to absurd, impractical and inefficient results. A person who has been discriminated against by a school district will often desire to bring claims under the federal, state and city discrimination laws. To bring a claim under the federal law, a plaintiff must first file with the EEOC, and receive a right to sue letter, before he or she can file a court action on that claim. See, e.g., Boza-Meade v. Rochester Housing Authority, 170 F. Supp.3d 535, 549 (W.D.N.Y. 2016) (must file a timely charge with EEOC, receive an EEOC right-to-sue letter and file action within 90 days to maintain claim under federal discrimination law). In New York, a plaintiff has 300 days to file with the EEOC charge to preserve his or her federal law claims, and it takes

---

[2] Smith v. Tuckahoe Union Free School Dist., 2009 WL 3170302 *11 (S.D.N.Y. Sept. 30, 2009), another case that did not allow for tolling, is distinguishable because the plaintiff in that case did not raise the issue of tolling when opposing the dismissal motion. Also, cases cited in footnote nine of Smith pertain to whether a filing of an EEOC or NYSDHR charge tolls common law state claims. Id. at *11 n.9. Here, we are dealing with statutory discrimination claims under identically worded statutes, and charges/complaints that are either directly filed or cross filed with the NYSDHR. Only one Eastern District case held that there no tolling, but in that case, no analysis provided, there was an alternative argument for dismissing the claim, and no other Eastern District cases or courts followed that holding. See Cincotta v. Hempstead Union Free Sch. Dist., 2016 WL 4536873 (E.D.N.Y. Aug. 30, 2016).

approximately six to eight months (or longer) to obtain a right to sue letter after filing a charge with the EEOC. See Id.

Therefore, if the filing of an EEOC Charge or NYSDHR complaint does not toll the one year statute of limitation under the Education Law for discrimination claims, a plaintiff who wants to bring a discrimination action against a school district under the federal, state and city laws in one action will not be able to do so. For instance, after a plaintiff files a charge with the EEOC (which is automatically cross-filed with the NYSDHR), if his or her claims under the state and city laws are not tolled by that filing, such plaintiff will have to commence his or her action for violation of the state and city discrimination laws in state court *while* his or her EEOC charge and cross filed NYSDHR complaint is pending to avoid the expiration of the limitations period.[3] When that plaintiff then receives his or her right to sue letter from the EEOC, if he or she wants to litigate in federal court, he or she will have no choice but to commence a separate action in federal court. Obviously, it is inefficient and absurd to force a party to file a separate action in a different court for essentially the same claims. Alternatively, if that plaintiff wants to avoid having to file two separate lawsuits to assert his or her claims under federal, state and city laws, and amends his or her state court complaint to add the federal claim, he or she gives up his or her right to litigate in federal court.

---

[3] If the one year statute of limitations is not tolled with the filing of an EEOC charge, another dilemma arises pertaining to the election of remedies provision contained in the New York law. In that scenario, when a plaintiff files a charge with the EEOC, which is automatically cross filed with the NYSDHR, and is forced to file his or her action in state court to avoid the expiration of the one year limitations period, such filing may violate the election of remedies doctrine under the NYSHRL. See N.Y. Exec. L. § 297(9); Borum v. Village of Hempstead, 590 F. Supp.2d 376, 382-83 (E.D.N.Y. 2008). Under the New York Human Rights Law, a plaintiff can file his or her complaint with the NYSDHR or the state court, but not both simultaneously. Id. Without a tolling provision for administrative filings with the EEOC or NYSDHR, a plaintiff, when forced to commence a state court action while the EEOC charge is pending, may be forced to violate the election of remedies provision since the filing with the EEOC is automatically filed with the NYSDHR. See Siddiqi v. New York City Health & Hosp. Corp., 572 F. Supp. 2d 353, 373 (S.D.N.Y. 2008). This may force a plaintiff to choose between federal or state/city claims, and prevent a plaintiff from being able to pursue both federal and state claims. No such dilemma needs to persist if the logical and fair reasoning of Riccardo is adopted.

Placing a plaintiff in the cross section of the conflicting requirements of federal and state discrimination laws, and forcing a plaintiff to commence an action in state court when he or she has a charge pending with the EEOC, is fundamentally unfair and impinges upon his or her rights to redress violations of the federal, state and city discrimination laws. Thus, the reasoning in Riccardo is far superior to that of Floratos, will surely win the day once addressed by the Second Circuit, and should be followed in this case.

Black filed an EEOC Charge on December 2, 2014, Reznikov filed an EEOC Charge on November 10, 2014, and Lebowitz filed a complaint with the SDHR on June 30, 2014. (Plaintiffs' Counterstatement of Facts filed Aug. 24, 2018 ("Pl. CSF") at ¶¶ 1, 3, 5.) Therefore, claims based on events occurring from December 2, 2013 (for Black), November 10, 2013 (for Reznikov), and June 30, 2013 (for Lebowitz) are timely, and not barred by any statute of limitations.

In addition, the statute of limitations analysis for hostile work environment and NYCHRL claims differ from discrimination claims with discrete adverse actions, such as discharge or demotion. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-18 (2002); Sotomayor v. City of New York, 862 F. Supp. 2d 226, 250-51 (E.D.N.Y. 2012). The Supreme Court held that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Morgan, 536 U.S. at 117; Sotomayor, 862 F. Supp. 2d at 250. Therefore, "provided that an act contributing to the [hostile work environment and NYCHRL] claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability." Id.; see Papelino v. Albany College of Pharmacy of Union Univ., 633 F.3d 81, 91 (2d Cir. 2011)("...a plaintiff may bring claims for discriminatory acts that would be barred by the statute of limitations as long as 'an act contributing to that hostile environment [took] place with

8

the statutory period.'" (internal citations omitted)); <u>Dash v. Board of Ed. Of City School Dist. of N.Y.</u>, 238 F. Supp. 3d 375, 384 (E.D.N.Y. 2017)(same); <u>Sotomayor</u>, 862 F. Supp. 2d at 249-50 (same).

Moreover, discrete acts which would otherwise be untimely to establish a discrimination claim as an adverse action, can be considered under the continuing violations doctrine to assess liability under a hostile work environment claim, including discriminatory acts relating to negative observation reports or evaluations. <u>See</u> <u>Sotomayor</u>, 862 F. Supp. 2d at 251. This Court held:

> To the extent these discrete acts [subjecting plaintiff to an inordinate number of observations and providing negative ratings on the observations] cumulatively create a hostile work environment, the continuing violation doctrine may save these claims under the NYSHRL [and ADEA]. Because some of the allegedly discriminatory conduct occurred after July 26, 2009, *all* of the discriminatory acts alleged may be considered timely for the purpose of plaintiff's state hostile work environment claim against the DOE.

<u>Id</u>. (emphasis added).

The New York City Human Rights Law does not make a distinction between discrimination claims for adverse actions and hostile work environment, and has been interpreted to prohibit discrimination which results in a plaintiff being treated less well because of a protected characteristic. <u>See</u> <u>Mihalik v. Credit Agricole Cheuvreux N.A., Inc.</u>, 715 F.3d 102, 109-10 (2d Cir. 2013); <u>Russo v. N.Y. Presbyterian Hosp.</u>, 972 F. Supp. 2d 429, 449-50 (E.D.N.Y. 2013). Because of that interpretation and application of the NYCHRL, the courts have applied a broader interpretation of the continuing violation doctrine that does not recognize the distinction made in <u>Morgan</u> regarding discrete acts. <u>See</u> <u>Sotomayor</u>, 862 F. Supp. 2d at 250-51.

9

Here, Plaintiffs describe systematic and relentless discrimination by O'Mahoney and Izzo from the start of O'Mahoney's tenure as principal of the School in January 2012 through the time the School closed in June 2016. (Pl. CSF at ¶¶ 104-239.) Plaintiffs describe from the start of his tenure, O'Mahoney expressed his animus and resentment toward the older, more senior teachers, and did whatever he could to break them down psychologically hoping to compel them to transfer, retire, or otherwise leave the school. (Id. at ¶¶ 107-08, 111, 120, 122, 124-43, 149-72, 175-91, 202-19, 227-39.) O'Mahoney and Izzo made offensive comments based on negative stereotypes of older people, and attacked Plaintiffs (and other older teachers) where it hurts most—their job security. (Id.) Both O'Mahoney and Izzo deliberately gave Plaintiffs false and unsupported observation reports and ratings, which damaged Plaintiffs' status and set them up for discharge. (Id. at ¶¶ 127-30, 136, 139, 169, 176, 189.) All of the teachers who received negative end-of-year ratings in the 2013-14, 2014-15 and 2015-16 school years (except one 39 year old) were over 40. (Id. at ¶¶ 221, 224, 226.) The discriminatory and harassing conduct also involved ostracizing, humiliating and intimidating Plaintiffs, while favoring the younger teachers, with the purpose of breaking the older teachers down psychologically so they would leave the school. (See, e.g., id. at ¶¶ 227-39.)

There are countless discriminatory and abusive acts by Defendants that occurred in within the one year limitation period, such as:

- 2013-2014 school year (Sept. 2013-June 2014) O'Mahoney stereotyped the older teachers as being in their "fuck you years" and collecting their "fuck you money." (Id. at ¶ 108.)

- False and unsupported observation reports issued to Lebowitz to psychologically break him down and get him to leave the school because of his age from October 2013 through May 2015. (Id. at ¶¶ 127, 128, 135)

- Izzo's statement to Lebowitz that she had to purposely give him a poor evaluation to make sure his year-end rating was sufficiently low occurred in April 2015. (Id. at ¶¶ 131-34.)

- Defendants brought 3020-a charges against Lebowitz to discharge him in June 2016. (Id. at ¶ 139.)

- O'Mahoney falsely and maliciously accused Lebowitz of not recording attendance of his students in May 2015. (Id. at ¶ 143.)

- O'Mahoney said to Reznikov at the end of the 2013 that "you've been in the system long enough and all you managed to do was get a high salary." (Id. at ¶ 159.)

- In 2014, Izzo made a slew of nasty and ageist comments to Reznikov, including, there is always a problem with all you senior teachers." (Id. at ¶¶ 157-58, 160-61.)

- O'Mahoney and Izzo deliberately issued false and unsupported observation reports to Reznikov to psychologically break her down as a way to purge her and many other older teachers from the School from November 2013 through May 2014. (Id. at ¶¶ 169.)

- Izzo scheduled a bogus disciplinary meeting with Reznikov on the last day of school in June 2014. (Id. at ¶ 171.)

- O'Mahoney made the slurs about older teachers being in their "fuck you years" and collecting their "fuck you money" at several staff meetings during his tenure, which was from January 2012 through June 2016. (Id. at ¶¶ 175, (Black Dep. At 29-32).)

- O'Mahoney and Izzo deliberately issued Black false and unsupported negative observation reports to psychologically break him down because of his age so that he would leave the school from January 2013 to October 2014. (Id. at ¶¶ 176, 189, 195, 206.)

- Collusion between O'Mahoney and consultant Leslie Paoletti to manipulate and downplay the positive observations Paoletti made about Black in March 2014. (Id. at ¶¶ 192-200.)

- O'Mahoney maliciously reported Black to the Office of Special Investigation in the Spring of 2015 when Black needed a leave for his mental health and was temporarily determined to be unfit to teach due to his mental health condition. (Id. at ¶¶ 209-19.)

Given that the above (and several other) incidents of discriminatory acts, harassment and abuse took place within the one year statutory period described above, all of O'Mahoney's and Izzo's acts of discrimination and harassment against Plaintiffs because of their age are timely

11

under the continuing violation doctrine for the purpose of assessing liability of Plaintiffs' claims and NYCHRL, and Reznikov's NYSHRL hostile work environment claim.

### B.    Reznikov's ADEA Claim Was Timely Filed

The limitations period for an ADEA claim is 300 days, and is satisfied by filing a Charge with the EEOC, or filing a complaint with the NYSDHR which is cross filed with the EEOC. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. §§ 626(d)(1), 633(b); Miller v. International Telephone and Telegraph Corp., 755 F.2d 20, 24 (2d Cir. 1985.) Reznikov filed an EEOC Charge on November 10, 2014, and therefore, claims based on events occurring from January 14, 2014 are not be barred by any statute of limitations. Id.

In addition, as explained above, because Reznikov claims a hostile work environment under the ADEA, and O'Mahoney and Izzo committed discriminatory acts after January 14, 2014, all discriminatory acts by O'Mahoney and Izzo described by Reznikov are part of her claim under the continuing violations doctrine. See Sotomayor, 862 F. Supp. 2d at 251.

### C.    Individual Liability and Statute of Limitations for Individuals Under NYSHRL and NYCHRL[4]

Principals and other school administrators are not officers of a board of education, and claims against them are not subject to the one year statute of limitations. See Sotomayor, 862 F. Supp.2d at 248-49. Rather, the three year statute of limitations applies. Id. N.Y. CPLR 214(2); N.Y.C. Admin. Code § 8-502(d). Further, this Court and the other District courts in this circuit all hold that the filing of a complaint with the EEOC or SDHR tolls the statute of limitations. See Penman, 69 N.Y.2d at 990, 517 N.Y.S.2d at 719; Martinez-Tolentino, 277 A.D.2d at 899, 715 N.Y.S.2d at 555; Esposito, 2008 WL 5233590 at *5; Sundaram, 424 F. Supp. 2d at 565. Therefore, all discriminatory acts conducted by O'Mahoney and Izzo within three years of when

---

[4] Plaintiffs acknowledge that under the ADEA the individual harassers cannot be held liable.

12

Plaintiffs filed their respective administrative complaints are considered in assessing Plaintiffs' claims against the individual defendants under the NYCHRL and Reznikov's hostile work environment claim against the individual defendants under the NYSHRL. Specifically, all acts from December 2, 2011 for Black, all acts from November 10, 2011 for Reznikov, and June 30, 2011 for Lebowitz, are timely.

## II.    PLAINTIFFS SUFFICIENTLY ESTABLISH AND RAISE ISSUES OF FACT AS TO THEIR DISCRIMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS WARRANTING DENIAL OF DEFENDANTS' SUMMARY JUDGMENT MOTION

### A.    Plaintiffs' NYCHRL Discrimination Claims and Reznikov's Hostile Work Environment Claims Under the ADEA and NYSHRL Should be Sustained

#### 1.    Hostile Work Environment Claims Under ADEA and NYSHRL Require an Analysis of the Totality of the Circumstances and the Specific Context in Which the Abuse Occurred

To establish a claim for hostile work environment under the ADEA and NYSHRL, a plaintiff must demonstrate that the offensive conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See Harris v. Forklift Sys., 510 U.S. 17, 21 (1993); Gallagher v. Delaney, 139 F. 3d 338, 347 (2d Cir. 1998). "The conduct must be intimidating, hostile, or offensive, with discriminatory intimidation, ridicule, and insult permeating the workplace." Gallagher, 139 F.3d at 347. "All of the circumstances must be considered: a reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it." Id. There is no precise test for making a determination on whether an environment is hostile or abusive, and in making such determination, the Court must look at all of the circumstances including the frequency of the discriminatory conduct, its severity, whether it unreasonably interferes with an employee's work performance, and what psychological harm resulted. See Thomas v. New York City Dep't of Ed., 938 F. Supp. 2d 334, 357 (E.D.N.Y. 2013); Sotomayor,

862 F. Supp. 2d at 260-61. Where reasonable jurors could disagree as to whether alleged incidents of insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law. See Whidbee v. Garzelli Food Specialties, Inc., 223 F.3d 62, 71 (2d Cir. 2000).

### 2.    Liability Standard Under the NYCHRL

The NYCHRL does not make a distinction between discrimination claims involving adverse actions and those involving a hostile work environment, but instead created a new paradigm designed to more effectively eliminate and redress discrimination in the workplace. See Mihalik, 715 F.3d at 109 (2d Cir. 2013); Russo, 972 F. Supp. 2d at 449-50. This necessitates the courts to conduct an independent analysis of NYCHRL claims. See Mihalik, 715 F.3d at 109.

The NYCHRL was revised and has been interpreted by this Circuit to redress discrimination that may not rise to the level of severe or pervasive. Id. at 110. Thus, to demonstrate a discrimination claim under the NYCHRL, a plaintiff need only demonstrate by a preponderance of the evidence that he or she has been treated less well than other employees because of his or her protected characteristic. Id. The severity and pervasiveness of the conduct is not relevant to liability, but only to the issue of damages. Id. As long as the discriminatory conduct rises above the level of petty slights and inconveniences, a plaintiff has an actionable claim under the NYCHRL and can seek redress. Id. at 110-11.

### 3.    Defendants Wrongly Dissect and Isolate Specific Instances of Discriminatory Conduct and Harassment, and Fail to Appreciate the Entirety of the Evidence

Defendants attempt to downplay the harassment and abuse Plaintiffs suffered by conducting a cold and clinical analysis of certain comments and actions by Defendants in

isolation. (Def. MOL at 8-35.) That type of cold and clinical analysis that dissects and isolates each act of discrimination distorts and misses the core truth and complex nature of discrimination in our society, and the discrimination suffered by Plaintiffs in this case. For example, Defendants argue that all discriminatory statements are "stray remarks," the negative evaluations do not rise to the level of an adverse action, the nasty comments did not contain explicit references to age, the disparate treatment of the older teachers was minor, and so on. (Id. at 21-22, 29-34)   That is not how a Court is supposed to assess the evidence in hostile work environment and NYCHRL claims. See Gallagher, 139 F.3d at 347-48.

The Honorable Jack Weinstein, writing for the Second Circuit, issued a wise and prophetic decision in which he discusses the complexity and nuances of hostile work environment discrimination, how the view of discriminatory conduct evolves and changes with the culture, and how a jury, a cross section of our community, is best suited to determine if discriminatory conduct is actionable under our discrimination laws. See Gallagher, 139 F.3d at 342-44. To demonstrate the discriminatory environment suffered by a plaintiff, such plaintiff should be permitted to create "a mosaic with the bits and pieces of available evidence" and allow a jury to determine if such evidence demonstrates a hostile or abusive work environment. Id. at 342. The Second Circuit explained that mores of the workplace are developing at a brisk pace, and characterizing conduct as harassing "can only be accomplished in a specific context." Id. The Second Circuit continued:

> A federal judge is not in the best position to define the current... tenor of American cultures in their many manifestations. Such an effort, even were it successful, would produce questionable legal definitions for the workplace where recognition of employees' dignity might require standards higher than those on the street. Id.

The Second Circuit made this observation in the context of a sex harassment case, but it equally applies to our culture on the issues of race, ethnicity, religion and age. For instance, as to

15

age, how the culture treats people as they are working into their later years (often out of necessity and often working deeper into their later years than in times past), the biases against older employees, and how older employees perceive and deal with those biases, is a developing cultural issue.  The views relating to older workers remaining in the workforce "are diverse and shifting," and "a jury made up of a cross-section of our heterogeneous communities provides the appropriate institution for deciding whether borderline situations should be characterized as … harassment."  Id.  The Second Circuit humbly held the following:

> The factual issues in this case cannot be effectively settled by a decision of an Article III judge on summary judgment.  Whatever early life of a federal judge, she or he usually lives in a narrow segment of the enormously broad American socio-economic spectrum, generally lacking the current real-life experience required in interpreting subtle… dynamics of the workplace based on nuances, subtle perceptions, and implicit communications. Id.

The Court went on to state, "An Article III judge is not a hierophant of social graces.  Evaluation of ambiguous acts such as those revealed by the potential evidence in this case presents an issue for the jury." Id. at 347.

In addition, as explained above, discrete actions of discrimination, including the slew of negative evaluations issued to Plaintiffs, are to be considered when determining whether a hostile work environment existed or there is a claim under the NYCHRL.  See Sotomayor, 862 F. Supp. 2d at 250-51 (discrete discriminatory acts such as negative evaluations may be considered in determining hostile work environment or NYCHRL claim); Gruberg v. Board of Ed. of Sewanhaka Central High School Dist., 3 F. Supp. 2d 280, 284-85 (E.D.N.Y. 1998)(negative evaluations considered when determining whether environment so hostile to compel teacher to resign).

16

   4.   **The Evidence Must be Viewed Holistically and in Context—the Discriminatory Comments and False, Unsupported and Unjustified Negative Observation Reports Strike at the Heart of a Teacher's Working Conditions and Psychological Well-being**

Defendants' treatment of Plaintiffs must be viewed in context and as a whole, not artificially dissected, as Defendants attempt to do. It is when the circumstances are viewed in their totality that one can get closer to the core truth and reality of an employee's circumstances.

Plaintiffs are older, tenured teachers who dedicated their professional lives—decades—to the profession of teaching. They depended on continuing in their profession to earn a living, maintain health insurance and have a pension to retire with dignity. (Pl. CSF at ¶¶ 140, 169-70, 181-82.) Therefore, when a new principal, O'Mahoney, who previously pled guilty to ethics violations and was drunk with power, openly expresses his resentment for older teachers in front of staff by saying, "[the older teachers] are in their fuck you years" and collecting their "fuck you money," an intimidating and ageist environment is created. (See, e.g., id. at ¶¶ 101-03, 107-08, 120, 125-26, 163.) Nasty comments, often with ageist stereotypes, permeated the school. (Id.)

However, what was worse than the offensive comments and ageist tone set by Defendants, was the false, unsupported and fabricated observation reports issued to Plaintiffs because of their age. (Id. at ¶¶ 127-30, 169, 176, 189.) The main bases by which teachers in the DOE are evaluated are by subjective observation reports. (Id. at 136.) The observation reports consist of 60% of the teachers' year-end rating, and that year-end rating determines whether a teacher can continue in the profession. (Id.) When a teacher receives one year-end rating of "Developing" or "Ineffective," they are placed on a Teacher Improvement Plan, and two year-end ratings of "Developing" or "Ineffective," makes them susceptible to the filing of New York Education Law 3020-a charges and discharge. (Id. at ¶¶ 139, 221-26.) Discharge from the DOE pursuant to 3020-a charges ends a teacher's career in all practical circumstances, as they can no

longer work in the New York City school system and suburban schools are unlikely to hire a teacher in the 50's or 60's who has been terminated ostensibly for cause from the New York City school system. The discharge of a tenured teacher pursuant to 3020-a charges is qualitatively different than a lawyer or accountant who is discharged because such lawyer or accountant can apply to other firms without being "blacklisted," and it is understood in those industries that those professionals often move to different firms throughout their career. A discharge pursuant to 3020-a charges is essentially the end of that teacher's career in the profession.

After decades of teaching and receiving positive observation reports and year-end ratings, Defendants attacked Plaintiffs by issuing negative observation reports that were false, unsupported and fabricated. (Id. at ¶¶ 127-30, 169, 176, 189.) O'Mahoney went so far as to fabricate a negative observation report for Black; Defendants issued over-the-top negative evaluations to Plaintiffs sometimes listing all of the categories evaluated as "ineffective"; and Izzo told Lebowitz (after making sure he was not recording the conversation) that she had to give him a very negative observation because she needed to bring his end of year rating down to "Developing." (Id. at ¶¶ 127-134, 169, 176-181, 189.) Because staying in the profession of teaching depended on these observation reports, when Plaintiffs received the purposely false observation reports knowing that Defendants were trying to get them out of the school because of their age, it resulted in extreme feelings of stress, injustice and fury (which had to be withheld to avoid being cited for insubordination). (Id. at ¶¶ 140, 163, 170, 180, 184.) Those actions by Defendants amount to psychological torture. Plaintiffs knew that Defendants resented the older teachers and wanted them out of the school, and engaged in a systematic plan to not only humiliate those teachers with ageist comments, but deliberately give them false and unsupported observation reports to break them down psychologically, hoping that they will transfer, retire or otherwise leave the school. See Sotomayor, 862 F. Supp. 2d at 251 (negative evaluations should

be considered in hostile work environment claims); Gruberg, 3 F. Supp. 2d at 285-86 (negative evaluations after previously receiving positive evaluations for years, and an age-related comment was sufficient to deny summary judgment).

Defendants' actions worked to the extent that Plaintiffs, who were not receiving any mental health treatment prior to O'Mahoney entering the school, all ended up having to seek extensive mental health treatment, were diagnosed with significant conditions such as PTSD, anxiety disorders and depression, and all take medications to subdue their anxiety. (Pl. CSF at ¶¶ 140, 172, 180, 184, 208); Sotomayor, 862 F. Supp.2d at 260 (psychological harm should be taken into account when assessing whether an work environment is hostile or abusive).

### 5. The Evidence Supports Reznikov's ADEA and NYSHRL Hostile Work Environment Claim and Plaintiffs' NYCHRL Discrimination/Hostile Work Environment Claims

#### a. Evidence Supporting Reznikov's Claims (ADEA, NYSHRL and NYCHRL)

Reznikov had to endure the following:

- January 2012 during a staff meeting, O'Mahoney stated that some teachers are receiving more money because they are older, and not because they are contributing more to the school. (Pl. CSF at ¶ 108.)

- During staff meetings, O'Mahoney referred to the older teachers as being in their "fuck you years" and earning their "fuck you money." (Id. at ¶ 107.)

- Comments from Izzo in September 2012 that she does not want old teachers with their stale methods; that nobody need "your" stale methods; Reznikov should learn from the younger teachers. (Id. at ¶ 149.)

- O'Mahoney making comments that he could have two younger teachers for the price of one older teacher. (Id. at ¶ 151.)

- Izzo telling Reznikov to think about retirement after Hurricane Sandy damaged her home, stating that Izzo has 400 young, bright, energetic teachers for one position from which she could choose. (Id. at ¶ 152.)

- Izzo refused to allow Reznikov to speak at meetings; allowed the younger teachers to speak; and referred to the older teachers as "oldies." (Id. at ¶¶ 153-54.)

- In September/October 2013, O'Mahoney told a table of older teachers who were still reading a training packet when others were finished, "I wonder if this has anything to do with being in your fuck you years." (Id. at ¶ 155.)

- Defendants gave Reznikov false and unsupported negative observation reports, and when Reznikov commented that the negative report was undeserved, Izzo said, "Get it through your head, you are not going to work here." (Id. at ¶¶ 156, 169.)

- At the end of 2013, O'Mahoney told Reznikov, "you've been in the system long enough and all you managed to do was get a high salary." (Id. at ¶ 159)

- Izzo made comments to Reznikov about going to the bathroom and made a comment that she is getting paid $100,000 to go to the bathroom. (Id. at ¶ 160.)

- When addressing whether Reznikov is getting a lunch break during Regents testing, Izzo said, "there is always a problem with you senior teachers." (Id. at ¶ 161.)

- Izzo reprimanded Reznikov for missing a meeting because Reznikov had to undergo tests for cancer, and knowing Reznikov was upset, Izzo immediately conducted an observation. (Id. at ¶ 164.)

- O'Mahoney screamed at Reznikov that she was the worst teacher in the school. (Id. at ¶ 168.)

- Issued Reznikov false and unsupported observation reports for the 2013-14 school year. (Id. at ¶ 169.)

- Treated Reznikov and older teachers as second-class citizens by not allowing them to participate in meetings, ostracizing them, advising young teachers on when observation reports were being held and not the older teachers, allowing younger teachers do-overs with respect to conducting lessons that were being evaluated, but not the older teachers, and creating an overall environment designed to send a message that older teachers were not welcome or wanted. (Id. at ¶¶ 227-39.)

This systematic conduct designed to get rid of Reznikov was severe and pervasive, and a jury should be permitted to make that decision. See Gallagher 139 F.3d at 347. Reznikov, who prides herself on her toughness, was broken psychologically because of the discriminatory

treatment and abuse; she suffered panic attacks and had to seek mental health treatment and mediation for the first time in her life. (Pl. CSF at ¶¶ 170, 172.)

### b. Evidence Supporting Lebowitz's NYCHRL Claim

Lebowitz, after more than two decades of receiving satisfactory ratings, experienced the following harassment and discrimination from Defendants after O'Mahoney became principal:

- January 2012 during a staff meeting, O'Mahoney stated that some teachers are receiving more money because they were older, and not because they were contributing more to the school. (Id. at ¶ 108.)

- During staff meetings, O'Mahoney referred to the older teachers as being in their "fuck you years" and earning their "fuck you money." (Id. at ¶ 107.)

- Lebowitz confronted O'Mahoney regarding his comment during the 2013-14 school year that older teachers are in their "fuck you years" and earning their "fuck you money," and O'Mahoney lamented how he "tried to get rid of senior teachers but [] couldn't. Either it takes too long or the union steps in." (Id. at ¶ 108.)

- Although Izzo admitted that O'Mahoney used the phrases "fuck you years" and "fuck you money" at the School, O'Mahoney denied ever using those phrases. (Id. at ¶ 110.) His blatant lie, and guilty plea to ethics violations, demonstrates his total disregard for rules and the law, and shows the type of person with whom Plaintiffs had to deal. (Id.)
- O'Mahoney and Izzo promised the younger teachers that they were going to get rid of the older teachers so that the younger teachers would not be excessed and have to start their tenure process all over again. (Id. at ¶ 124.)

- O'Mahoney and Izzo begin issuing false and unsupported observation reports to Lebowitz, the first in his **thirty** year career. (Id. at ¶¶ 127-28.)

- Because Lebowitz performed well on the objective criteria on his end-of-year rating, Defendants gave him observation ratings that were severely negative to ensure that his end-of-year rating was Developing or Ineffective and could not be helped by the objective portion of the end of year rating. (Id. at ¶¶ 129, 130.)

- Izzo admitted to Lebowitz during a post observation conference that she had to purposely give him very negative observation report ratings to ensure his end-of-year rating was sufficiently low. She asked Lebowitz if he was taping her before making this comment. (Id. at ¶¶ 131-34.)

- These ratings resulting in Defendants placing Lebowitz on a Teacher Improvement Plan, and later charging him with incompetence and unsuccessfully seeking his discharge. (Id. at ¶ 139.)

- O'Mahoney also refused to give Lebowitz an ICT position to which he was entitled and the cafeteria supervisor position to which he was entitled. (Id. at ¶ 141.)

- Treating Lebowitz and older teachers as second-class citizens by not allowing them to participate in meetings, ostracizing them, advising young teachers on when observation reports were being held and not the older teachers, allowing younger teachers do-overs with respect to conducting lessons that were being evaluated, but not for the older teachers, and creating an overall environment designed to send a message that older teachers were not welcome or wanted. (Id. at ¶¶ 227-39.)

The stress and upset of Lebowitz having his principal openly express his disdain for older teachers and his desire to get rid of them, and then experiencing O'Mahoney and Izzo issuing over-the-top false and unsupported observations reports over a three year period to purposely push down his end of year rating, is a severe and pervasive form of psychological abuse, and certainly sufficient to support a claim under the NYCHRL, as it cannot be considered petty or trivial. See Mihalik, 715 F.3d at 109-11, 113. There is more than sufficient evidence to allow a jury to determine whether a reasonable teacher would have perceived Defendants' comments and actions as creating a hostile or abusive environment or altering the terms and conditions of his employment. See Gallagher, 139 F.3d at 347. Lebowitz certainly perceived the comments and actions over the years to be hostile and abusive. (Pl. CSF at ¶ 140.) As a result of the abuse he suffered, Lebowitz had to seek professional mental health treatment, was diagnosed with Post Traumatic Stress Disorder, anxiety and depression, and was prescribed and is still taking several medications for those conditions. (Id.)

### c. Evidence Supporting Black's NYCHRL Claim

Black was also exposed to O'Mahoney's comments about older teachers being in their "fuck you years" and "collecting their fuck you money," and experienced Defendants'

systematic attempt to break him down psychologically so that he would leave the school. (Id. at ¶¶ 107, 175.)

- O'Mahoney made comments that older teachers were close-minded regarding the use of technology. (Id. at ¶ 175.)

- In January 2013, O'Mahoney drafted and issued a wholly fabricated observation report. The evidence proves Black's testimony that O'Mahoney did not observe him on the day listed in the observation report, and Black did not even teach the period O'Mahoney said he observed. (Id. at ¶¶ 176-79.)

- After Black took a leave for mental health issues relating to O'Mahoney's getting away with issuing a totally fabricated report, O'Mahoney changed Black's academy assignment, which prevent Black from consulting with the teachers who taught his students in other subjects. (Id. at ¶ 186.)

- When Black questioned O'Mahoney about the switch, he told Black "you're a grown man.  If you cannot be here, if you cannot do the job, then don't be here." (Id. at ¶ 187.)

- O'Mahoney and Izzo continued to give Black false and unsupported observation reports which threatened Black's ability to maintain his job as teacher. (Id. at ¶¶ 189-90.)  The observation reports were over-the-top, and in one instance, gave Black 10 ineffective ratings. (Id. at ¶ 194.)

- A third-party teaching consultant Leslie Paoletti wrote in her notes that Black made dramatic improvements, but after speaking to O'Mahoney, she downplayed Black's progress, showing that O'Mahoney was not going to allow Black to succeed. O'Mahoney issued the observation report with 10 ineffective rating shortly after the incident with Paoetti. (Id. at ¶¶ 192-95.)

- Because Paoletti inadvertently sent an e-mail to Black instead of O'Mahoney, Black discovered that Paoletti walked back her positive comments about him to O'Mahoney. Paoletti did this even though she told Black that the observations and comments were supposed to be confidential and used solely as a learning experience. (Id. at ¶¶ 197-98.)

- When Black took a leave because of the anxiety and depression caused by Defendants' conduct, O'Mahoney claimed that Black was "conniving," and forced him to be examined by the Department's psychiatrist, who confirmed Black's condition. Even after receiving the psychiatrist's report, O'Mahoney claimed Black was faking his condition and reported Black to the Office of Special Investigation ("OSI").  An investigator was dispatched to Black's home and the investigation was dropped when the office realized the fraud claim was unsubstantiated. (Id. at ¶¶ 208-19.)

- Defendants treated Black and older teachers as second-class citizens by not allowing them to participate in meetings, ostracizing them, advising young teachers on when observation reports were being held and not the older teachers, allowing younger

teachers do-overs with respect to conducting lessons that were being evaluated, but not for the older teachers, and creating an overall environment designed to send a message that older teachers were not welcome or wanted. (Id. at ¶¶ 227-39.)

After hearing a principal make resentful and hostile comments to older teachers, and then having that principal wholly fabricate an observation report to damage Black's career, such action, in and of itself, is outrageous, egregious and abusive. (Id. at ¶¶ 176-83.) Combined with Defendants' relentless attacks on Black, including over-the-top negative observation reports and reporting him to OSI, there is certainly sufficient evidence to allow a juror to determine Black has a claim under the NYCHRL and that the multitude of discriminatory acts against him were more than trivial or petty. See Mihalik, 715 F.3d at 109-11, 113; Gallagher, 139 F.3d at 347. Black certainly perceived it that way, and the torment he suffered at the hands of Defendants forced him to receive extensive mental health treatment, caused him to be diagnosed with and suffer from PTSD, anxiety and depression, and caused him to take several medications to allow him to function. (Pl. CSF at ¶¶ 180-83, 191, 208.)

### 6. The Evidence of Abuse Proffered By Plaintiffs Is Sufficient to Establish Their Claims Under the NYCHRL and Reznikov's Hostile Work Environment Claim under the ADEA and NYSHRL

This Court has denied motions to dismiss and summary judgment motions for abuse that was less than what was suffered by these Plaintiffs, and did so under the higher burden of the ADEA and NYSHRL. For instance, in Gruberg, the teacher performed more than satisfactory throughout her career, but with a change of administration, the new administration began to criticized her and provide her with negative evaluations. 3 F. Supp. 2d at 282. The administration suggested retirement and implied that it could bring 3020-a charges against her. Id. This Court held that the "onslaught of unfounded criticism couple with the threat of [bringing a 3020-a charges]" was sufficient to permit a fact finder that the plaintiff's environment was so intolerable that she was forced to resign, i.e., that she was constructively

discharged.  Id. at 284-85.[5]  Like in Gruberg, Plaintiffs in this case received an onslaught of unfounded criticism after years of more than satisfactory performance by a principal who openly expressed his disdain for senior teachers, threatened to get rid of the senior teachers, and brought 3020-a charges based on the unfounded criticism against Lebowitz.  Thus, with the similarities to the Gruberg case, and all of the additional discriminatory and nasty comments and actions of Defendants against Plaintiffs, there is clearly sufficient evidence to support Reznikov's hostile work environment claim, and all of Plaintiffs' claims under the less rigorous NYCHRL standard, i.e., that they were treated less well than younger teachers.

In Thomas v. New York City Dep't of Ed., a teacher alleged the administration made comments about purging the older teachers at the top of the pay scale, and that older teachers were stuck in their old methods. 938 F. Supp.2d 334 (E.D.N.Y. 2013).  The plaintiff in Thomas also claimed that the administration provided a benefit to students so they would fabricate a misconduct charge against that teacher.  This Court held that those allegations, if true, were sufficient to establish a hostile work environment.  Id., 938 F. Supp. 2d at 357.  Similarly, Plaintiffs endured comments about purging the older teachers, about their salaries being too high, and their methods stale.  Also, like in Thomas, Defendants fabricated reasons to discipline Plaintiffs and to try to get them to leave the School.  Thus, summary judgment on Reznikov's hostile work environment claim and Plaintiffs' NYCHRL claims, under its broader application, should be denied.  See Mihalik, 715 F.3d at 113 (setting forth paradigm to follow for NYCHRL claims).

---

[5] To establish a constructive discharge, the plaintiff must show that defendants intentionally created an intolerable work atmosphere that forces an employee to quit involuntarily.  Gruberg, 3 F. Supp. 2d at 284.

7.    **Defendants' Abuse Was Based on Age and There is More Than Ample Evidence to Allow a Reasonable Juror to Make that Determination**

Defendants argue that no interference can be made from the evidence that their conduct against Plaintiffs was based on Plaintiffs' age. The argument is without merit.

This Court has held that a plaintiff can prove a defendants' bias through circumstantial evidence. See Claudio v. Mattituck-Cutchogue Union Free School Dist., 955 F. Supp. 2d 118, 134 (E.D.N.Y. 2013). In determining whether there is sufficient evidence of motivation to support a jury verdict for discrimination, a court must "examine the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the plaintiff.'" Id. quoting Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

Plaintiffs present the best evidence there is to demonstrate that Defendants' motivation was based on age: Principal O'Mahoney and Izzo explicitly and frequently expressed their disdain and resentment of the older teachers. These were not stray remarks which were ambiguous or mild, but explicit comments demonstrating their sincerely held belief and on which they acted. After becoming principal in January 2012, some of the remarks made by O'Mahoney included: (1) after complaining about budget restraints he stated "some teachers are receiving extra money because they are older and have more years in the system, and not because they are contributing more to the school; (2) older teachers are in their "fuck you years" and collecting their "fuck you money"; (3) I tried to get rid of senior teachers but I couldn't. Either it takes too long or the union steps in; (4) criticizing teachers for not finishing training materials fast enough, he said, "I wonder if that has anything to do with you being in your "fuck you years;" and (5) you've been in the system long enough and all you managed to do was get a high salary. (Pl. CSF at ¶¶ 107-08, 155, 159, 175.) Izzo made comments such as: (1) I am not going to tolerate

the stale methods of older teachers; (2) I just don't want senior teachers here in this department, in this school, with their stale methods; (3) comments that Reznikov should retire; (4) calling senior teachers "oldies"; and (5) "there is always a problem with all you senior teachers. (Id. at ¶¶ 149-50, 152, 153, 161.) Both O'Mahoney and Izzo made comments about how they can get two young teachers for the price of one older teacher. (Id. at ¶ 151.)

Defendants' argument that the comments are stray remarks is without merit, as the cases cited by Defendants are wholly distinguishable from the facts in this case. (Def. MOL at 5, 29). In Parron v. Herbert, 2018 WL 2538221 (S.D.N.Y. May 18, 2018), the plaintiff, in attempting to show animus based on age, argued that a comment by an instructor that he "looked confused" and another comment "what don't you know" in response to plaintiff saying that he did not know what to do, were considered stray remarks because there was no reference to age, and no other age-related comments were made (2018 WL 2538221 at * 22). In Melman v. Montefiore Med. Ctr., 98 A.D.3d 107 (1st Dep't 2012) two positive statements about younger physicians and a comment made by a supervisor about the supervisor's own weakened physical condition, were considered stray remarks because such statements showed no aspersion against older workers (98 A.D.3d at 125). In Seivright v. Montefiore Med. Ctr., 2014 WL 896744 (S.D.N.Y. March 3, 2014), the only comments made were by non-supervising employees (some not even identified) suggesting that the plaintiff should retire. 2014 WL 896744 at *10. Here, in contrast to those cases, Plaintiffs' supervisors, O'Mahoney and Izzo, who conducted Plaintiffs' evaluations and determined their ratings, made many comments that unequivocally expressed their resentment and disdain for older teachers, and how they want to get rid of the older teachers.

Defendants also argue that the statements by Defendants, even O'Mahoney's comments about older teachers being in their "fuck you years" and collecting their "fuck you money," are not indicative of animus based on age. (Def. MOL 10-11). Although Izzo admitted that

27

O'Mahoney made those comments, Defendants pretend that they do not know what those comments mean. (Id.) The obvious understanding of those statements pertains to employees who are in their later years who do not care about their job, who are simply eyeing retirement, and yet are collecting a salary that is at its highest point in their career. The statements feed into the stereotype of older government workers, and specifically teachers, being lazy during the waning years of their career. At the very least, a jury should be the body who determines whether such comments are related to age. Gallagher, 139 F.3d at 342-44, 347.

Defendants attempt to isolate O'Mahoney's and Izzo's comments by claiming that they were made too far into the past, or that a specific date was not provided for the comments. (Def. MOL at 11.) However, Black testified that O'Mahoney made the "fuck you years" and "fuck you money" comments at *several* staff meetings, which had to have been after January 2012 when O'Mahoney first started as principal (Pl. CSF at ¶ 175), and Lebowitz specifically stated that O'Mahoney made the "fuck you years" and "fuck you money" comment during a staff meeting during the 2013-14 school year. (Id. at ¶ 108). Also, the comments made by O'Mahoney and Izzo were made in conjunction with their discriminatory acts against Plaintiffs. O'Mahoney's and Izzo's discriminatory comments and actions were constant during the relevant period of time starting in January 2012. After making comments that showed resentment and animus toward the older teachers, Defendants immediately began their attack on Plaintiffs by giving them false, fabricated and unsupported observation reports—a key discriminatory act claimed by Plaintiffs—and continued making those comments simultaneously with giving Plaintiffs the false observation reports.

For instance, Lebowitz received his first negative false observation report in October 2013, the same time that O'Mahoney made the "fuck you years" and "fuck you money" comments (Pl. CSF ¶¶ 108, 127 (Ex. 13)); Reznikov received her first false negative report in

November 2013 shortly after O'Mahoney made ageist comments to her and to the staff (Id. at ¶¶ 155, 169 (Ex. 26)); and Black received the wholly fabricated report in January 2013 when many of the ageist statements were being said (Id. at ¶¶ 175-76.)   Further, the comments reveal Defendants' intentions, and their actions fulfilled the plan and promise to rid of the older teachers by breaking them down psychologically so they will retire, transfer or otherwise leave the school.   The circumstances must be viewed in their totality and as a whole, and not artificially isolated. See Gallagher, 139 F.3d at 342-44, 347.

Defendants also attempt to argue that comments that reference senior teachers and seniority are not indicative of age. (Def. MOL at 16).  That defies common sense, especially in the context of New York City teachers.  Obviously, in almost every case, senior teachers who have 20 or more years of experience will be older than those with two, three or five years of experience.  To the extent there is some ambiguity as to whether comments negatively referring to senior teachers has a connotation relating to older teachers, such question should be left to a jury. See Gallagher, 139 F.3d at 342-44, 347.

Also, Lindell v. N.Y.C. Dep't of Ed., 2018 WL 1611370 *10 (E.D.N.Y. March 30, 2018), cited by Defendants, is distinguishable because there, the plaintiff attempted to prove discriminatory motive based on questions about retirement and salary, which this Court held to be weak support for age-based claim. Here, the comments about the senior teachers were not innocuous like in Lindell, but were included in statements about getting rid of senior teachers, not wanting senior teachers at the school, about their methods being stale and that they are always a problem. (Pl. CSF ¶¶ 107-108, 111, 120, 124, 149, 150, 151, 161.)

Besides the comments, when a union won a grievance that prevented principals from failing schools from ignoring seniority in deciding what teachers to keep or remove, O'Mahoney resented it. (Id. at ¶¶ 112-20.)  Because this resulted in younger teachers being excessed, he told

the younger teachers that they should not worry and promised them that he was going to get rid of the older teachers so the younger ones will not be excessed. (Id. at ¶¶ 121-24.)

Defendants argue that evidence showing that they wanted to replace older teachers who are making more money with younger ones is not actionable because the excessing of teachers is based on seniority. (Def. MOL at 16). That argument misses the point. The evidence showing that O'Mahoney was obsessed with the budget, was explicitly resentful of the older teachers earning higher salaries and were taking away jobs for younger teachers, and wanted to force the older teachers out and keep the younger ones, demonstrate Defendants' motivation to torture and psychologically break down Plaintiffs so they leave on their own or eventually receive 3020-a charges. Evidence of this nature has been acknowledged by this Court as evidence of discriminatory animus, and only adds to the questions of fact that need to be decided by a jury. See Gruberg, 3 F. Supp. 2d at 285-86.

Defendants further try to isolate all of their acts of discrimination to argue that Plaintiffs fail to show that they were treated differently from younger teachers. (Def. MOL at 17.) However, the disparate treatment between Plaintiffs and the other older teachers on one hand, and the younger teachers on the other, is borne out not only by Plaintiffs' testimony and myriad of examples cited by Plaintiffs (Pl. CSF ¶¶ 227-239), but the statistical evidence. In the 2013-14 school year, 15 of the 16 teachers who received a negative rating were over 40 (the other teacher was 39). (Id. at ¶¶ 221-26.) In the 2014-15 school years, all six of the teachers who received negative ratings were over 40, and in the 2015-16 school year the two teachers who received a negative rating were over 40. (Id.) In sum, in the three schools years of 2013-14, 2014-15 and 2015-16, not one teacher under 39 years old received a negative year end rating. (Id.) In addition, in 2014-15 and 2015-16 school years, every teacher placed in the Teacher Improvement Program was over 40 years old. (Id.) This evidence corroborates Plaintiffs' claim that Defendants targeted

Plaintiffs and purposely gave them poor evaluations and ratings because of their age. Defendants attempt to flip the statistics to show that some older teachers received "Effective" ratings (Def. MOL at 18), but that does not overcome the persuasiveness and relevance of the undisputed evidence that every teacher who did receive a negative rating and was placed in the Teacher Improvement was over 40, and no teachers under 40 during a three year period received a negative rating. See Claudio, 955 F. Supp.2d at 135 (fact that superintendent did not hire anyone over 40 evidence of ageist motivation).

In Claudio, to prove that the defendants' actions of denying plaintiff tenure were based on the plaintiff's age, the plaintiff proffered evidence that: (1) the superintendent did not hire anyone over 40 since obtaining the position; (2) the individual who replaced plaintiff after her discharge was under 40; (3) the superintendent made a comment to plaintiff's wife about plaintiff "being an old dog and teaching an old dog new tricks; and (4) the superintendent said he wanted to hire young people whom he could mold. 955 F. Supp.2d at 135-137. This Court held that the statements made by the superintendent, when viewed in context with other evidence introduced at trial, was sufficient for a jury to find that the superintendent's decision was motivated by a discriminatory animus based on age. Id. at 136-37.

Like Claudio, here, O'Mahoney and Izzo made several statements showing their animus against older teachers, and expressed their desire to keep younger teachers and to purge the older teachers, and the statistical evidence shows that every teacher who received a negative year-end evaluation over a three year period was over 40 (with one exception of a teacher being 39). (Pl. CSF at ¶¶ 107-08, 149-50, 152, 153, 155, 159, 161, 175, 221-26.) That evidence coupled with the deliberately false and unsupported negative evaluations given to Plaintiff when previously they received only satisfactory ratings, and the disparate treatment between the older and younger teachers, is certainly sufficient to show that Defendants' motivation for their actions was

because of Plaintiffs' age. See Claudio, 955 F. Supp. at 135-37; Gruberg, 3 F. Supp. 2d at 285-86 (drastic change in evaluation from previous years coupled with an age-related comment sufficient to raise issues of fact regarding defendants' motivation).

In Gruberg, this Court denied defendants' summary judgment motion and held that the circumstantial evidence proffered by the plaintiff raised issues of fact as to whether defendants' motivation was based on age. 3 F. Supp. 2d at 285. The evidence consisted of: (1) plaintiff receiving excellent ratings and evaluations before the new principal was appointed; (2) plaintiff receiving negative ratings and evaluations only one year later after the new principal was appointed; (3) a comment by the administration that the plaintiff ought to retire; and (4) plaintiff's testimony that the administration engaged in a pattern and practice of pushing out older teachers in favor of younger ones. Id. at 285-86. This Court held that "this case is loaded with genuine issues of material fact" as to the defendants' motivation. Id. at 286.

Like Gruberg, Plaintiffs all received satisfactory ratings or better throughout their careers, and then all of a sudden received over-the-top negative evaluations and ratings. Defendants made many ageist comments, far more than what was proffered in Grueberg. Further, as in Gruberg, the three Plaintiffs here provided testimonial, documentary and statistical evidence showing Defendants' systematic desire to purge the older teachers in favor of younger ones with much lower salaries. There is certainly sufficient evidence here to for a reasonable jury to determine that Defendants' actions were motivated by a discriminatory animus against older teachers. See id.; Claudio, 955 F. Supp.2d at 135-37.

**B.      Lebowitz's Discrimination Claims Based on Discrete Adverse Action-ADEA and NYSHRL**

The ADEA makes it unlawful for an employer to take an adverse action against an employee because of that individual's age. 29 U.S.C. § 623(a)(1). To establish a prima facie

claim of age discrimination, the plaintiff must show (1) that he was within the protected age group; (2) that he was qualified for the position; (3) that he experienced an adverse employment action, and (4) that such action occurred under the circumstances giving rise to an inference of discrimination. See Jones v. New York City Dep't of Educ., 286 F. Supp.3d 442, 449 (E.D.N.Y. 2018).

When a plaintiff establishes a prima facie claim, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse action. If the employer proffers such non-discriminatory reason, the plaintiff must show that the proffered non-discriminatory reason is a pretext for the discrimination. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010). For a plaintiff to defeat a summary judgment motion, he or she "need only show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief; and (2) it is more likely than not that an unlawful basis [for the] adverse action was the true reason. See Gruberg, 3 F. Supp.2d at 284.

Here, the adverse action that comprises Lebowitz's claim is that he was subjected to 3020-a charges to discharge him for incompetency. The only issue challenged by Defendants is that Lebowitz cannot show an inference of discrimination, or that Defendants' proffered non-discriminatory reason was a pretext for discrimination. (Def. MOL at 24-29.) Defendants argue that Lebowitz cannot provide sufficient evidence showing that Defendants brought the 3020-a charges because of his age. (Id.) Defendants' argument is without merit.

Defendants argue that the charges were brought against Lebowitz because of his poor performance, and cite the observation reports he received over a three year period. (Id. at 28.) However, a significant portion of Lebowitz's claim is that he was targeted by Defendants and given false and unsupported negative observation reports because of his age. (Pl. CSF at ¶¶ 127-134.) Lebowitz and the other Plaintiffs in this action proffered evidence that O'Mahoney and

33

Izzo, the individuals who conducted a vast majority of the observations, made frequent statements offensive to older teachers and feeding on stereotypes of older people. (Id. at ¶¶ 107-08, 149-50, 152, 153, 155, 159, 161, 175.) The statistical evidence demonstrates that only teachers over 40 received negative evaluations and were placed in the Teacher Improvement Program. (Id. at ¶¶ 221-26.) Lebowitz testified that after one observation, Izzo asked him if he was recording her, and when he said "no," she told him that she need to give him a low score on the observation to make sure his year-end rating was sufficiently low. (Id. at ¶¶ 131-34.) Also, during the twenty previous years Lebowitz taught, he received only satisfactory ratings. (Id. at ¶ 21.) All of this evidence, as well as the evidence included in II(A)(3), at least raise issues of fact pertaining to Defendants' motivation for issuing those negative observation reports and bringing the 3020-a charges against him. See Gruberg, 3 F. Supp.2d at 285-86. Even at the 3020-a hearing, the Hearing Officer refused to make a determination relating to age discrimination, but stated that Lebowitz "raised serious issues concerning Principal O'Mahoney's potential bias." (Id. at ¶ 144.)

In Gruberg, an ageist comment and the fact that the plaintiff's rating abruptly changed from good to poor was sufficient to raise an issue of fact as to the defendants' motivation. 3 F. Supp.2d at 285-86. Here, there is an abundance of evidence showing O'Mahoney's and Izzo's disdain for older teachers and their desire to hire and keep younger ones. This is an issue which a jury should decide. See Gallagher, 139 F.3d at 342-44, 347; Gruberg, 3 F. Supp.2d at 285-86.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion for summary judgment as to all of Plaintiffs' NYCHRL claims, Reznikov's ADEA and NYSHRL based on hostile work environment, and Lebowitz's ADEA and NYSHRL claim based adverse action, and grant Plaintiffs such other and further relief as the Court deems proper.

Dated:   Garden City, New York
         March 13, 2019

Stagg, Terenzi, Confusione & Wabnik, LLP

By:        /s/ David R. Ehrlich
               Debra L. Wabnik
               David R. Ehrlich
           *Attorneys for Plaintiffs*
           401 Franklin Avenue, Suite 300
           Garden City, New York 11530
           Tel: (516) 812-4500
           Fax: (516) 812-4600